WALTER P. TINNEY, as Administrator of the Estate of WALTER J. TINNEY, Deceased, Respondent, v. NEILSON's FLOWERS, INC., et al., Appellants.

Latham, Kleinfeld and Brennan, JJ., concur; Martuscello, Acting P. J., and Benjamin, J., dissent and vote to reverse the order, deny the motion for a new trial and reinstate the jury's verdict, with the following memorandum: This is a wrongful death action stemming from an accident in which the deceased, a pedestrian, was struck by defendants' station wagon. The thrust of the defense was that the deceased was intoxicated at the time of the accident and contributorily negligent because of his condition. The action was brought by the deceased's son, as administrator of his estate, on behalf of himself and his sister as the deceased's surviving relatives. When the action was placed on the calendar and plaintiff requested a general preference, he filed a copy of the death certificate and stated that the Central Islip State Hospital records had been made available to defendants. The death certificate listed "Psychosis due to Alcohol, Deterioration" as a contributory cause of death; the Central Islip State Hospital records disclosed that the deceased had been treated there for alcoholism. At the trial, plaintiff injected the issue of intoxication into the case by eliciting from each plaintiff's witness, on direct examination, that he had not smelled alcohol on the deceased's breath shortly after the accident. The witnesses who so testified on direct examination were the deceased's son and daughter, the police officer at the accident scene, and the doctor who had given the deceased emergency treatment at the hospital. On cross-examination of the deceased's son and daughter, they testified without objection that the deceased had had a drinking problem and had been treated for alcoholism at Central Islip State Hospital. After they testified, the record of that hospital was admitted in evidence. When the doctor thereafter testified, he not only was asked about the absence of an alcohol odor on the deceased's breath, but was

also questioned on direct examination about the contents of the hospital record, which included the notation " Mental Diagnosis: Psychosis due to Alcohol, Deterioration "; and at the request of plaintiff's counsel he defined that diagnosis to the jury. During the doctor's cross-examination the death certificate was admitted in evidence without objection; and, as above-noted, it contained a notation that a contributing cause of death was "Psychosis due to Alcohol, Deterioration". The jury did not take the hospital record or the death certificate with them when they retired to deliberate. After one hour of deliberation they returned a unanimous verdict for defendants. Thereafter the Trial Judge set aside the verdict and granted a new trial on the ground that he had erred by admitting in evidence the parts of the hospital record and death certificate which referred to the deceased's alcoholism; he held that this was error because that evidence disgraced the deceased's memory and therefore came within the " non-waivable " medical privilege of CPLR 4504; and he further held that this error must be deemed prejudicial. The majority of this court agrees with the trial court's reasoning and determination and is affirming the order granting a new trial. We disagree and believe the motion for a new trial should have been denied. We believe that in today's more enlightened climate, psychosis resulting from chronic alcoholism would not be considered a condition that "would tend to disgrace the memory of the decedent" (CPLR 4504, subd. [c]). Today, such an affliction is considered merely an unfortunate illness, not a disgraceful sin or crime (cf. Matter of Podolak, 10 A D 2d 794; Matter of Potter, 24 A D 2d 812). Hence, evidence of such an affliction would be admissible if the medical privilege were waived by the deceased's personal representative or next of kin (CPLR 4504, subd. [c]); and in this case there clearly was such a waiver (cf. Matter of Beeler v. Hildan Crown Container Corp., 26 A D 2d 163; Johnson v. Johnson, 25 A D 2d 672; Hughes v. Kackas, 3 A D 2d 402; Strader v. Collins, 280 App. Div. 582). Apart from the foregoing, we believe it would be inherently wrong to permit heirs to bring a wrongful death action for their own personal gain and then prohibit the defendants from defeating their claim by showing that the deceased may have caused his own death. The relevant provision in CPLR 4504 (subd. [c]) was designed as a shield to protect a decedent's memory, but the majority's holding in this case would allow it to be used as a sword to gain a possibly unjust result and an undeserved windfall for the heirs. Such use of the statute should not be aided by the courts, even if they have to strain to avoid it. Finally, if we were to assume arguendo that it was error to receive the hospital record and death certificate in evidence, we fail, for various reasons, to see how it could have been in the least prejudicial to plaintiff. First: It was plaintiff himself who injected the issue of intoxication into the case by having each of his witnesses testify on direct examination that he did not smell alcohol on the deceased's breath. On the cross-examination of the deceased's two children, they testified freely about his chronic alcoholism and confinement in Central Islip State Hospital for that condition; that testimony was competent, was not objected to, and was not prohibited by the medical privilege provisions of CPLR 4504; hence, everything in the hospital record and death certificate on that point was already properly before the jury. In addition, the jury did not take the hospital record or death certificate to the jury room when deliberating, so that its verdict for defendants must have been based on the oral testimony properly in the case. Second: The proof overwhelmingly established that the deceased was guilty of contributory negligence. At the time of the accident he was staying with his daughter in Jackson Heights, Queens, while on a Christmas Holiday pass from Central Islip State Hospital. He disappeared from his daughter's home on December 26. The accident occurred at 8:00 P.M., December 27, on Glen Cove Road in

534

Greenvale, Nassau County. At that time and place it was dark, raining heavily, and there were no lights on the road. Defendant Charles M. Neilson and his wife (the only eyewitnesses to accident) testified that the deceased was wearing a black hat and black coat and that he was walking practically in the middle of the road when he was struck by defendants' car; they further testified that there was a strong smell of alcohol on his breath. The police officer who came to the scene testified that the deceased was lying partly in the right-hand traffic lane of the road; that his outer clothes were dark brown; and that he was wearing two or three suits, one on top of the other. Clearly, on this proof a finding of contributory negligence was inevitable. On this record, then, the receipt of the hospital record and death certificate in evidence could not have materially prejudiced plaintiff or affected the outcome; hence the jury's verdict should not have been set aside even if their admission in evidence were deemed error. For these reasons we vote to reverse, deny the motion for a new trial, and reinstate the jury's verdict. [61 Misc 2d 717.]